IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARTER BURCH,<br>    Plaintiff<br><br>v.<br><br>CITY OF HARRISBURG BUREAU OF POLICE OFFICER MARC HOWELL, OFFICER ESTEBAN RESTREPO, OFFICER CYNTHIA KREISER, and POLICE COMMISSIONER THOMAS CARTER,<br>    Defendants. | Civil Action No: _____<br><br>JURY TRIAL DEMANDED<br><br>ELECTRONICALLY FILED |

## COMPLAINT

Plaintiff Carter Burch, by and through his counsel, The Law Firm of Killian & Gephart, LLP, alleges as follows:

## I. PRELIMINARY STATEMENT

1. This case concerns the use of unreasonable force by City of Harrisburg Bureau of Police Officers Marc Howell, Esteban Restrepo, and Cynthia Kreiser against Carter Burch ("Plaintiff") outside a Harrisburg nightclub.

2. Specifically, on March 15, 2025, Plaintiff was subjected to excessive force by Officer Marc Howell, who violently pushed Plaintiff into the street, took him to the ground mere feet from oncoming traffic, and handcuffed him. Officer Esteban Restrepo further used excessive force by grabbing and dragging Plaintiff by

the neck and handcuffing him under similar circumstances. The actions were unreasonable and violated clearly established law, as Plaintiff was not engaged in any unlawful activity, was not attempting to flee, and did not pose a threat to the safety of the officers or the public.

3. As a proximate result of the Defendants' actions, Plaintiff suffered physical harm, humiliation, and emotional suffering. Mr. Burch seeks redress for violation of the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

## II. JURISDICTION AND VENUE

4. This action arises under the United States Constitution, particularly under the Fourth and Fourteenth Amendments, and asserts claims under 42 U.S.C. § 1983.

5. This action also asserts claims under Pennsylvania tort law pursuant to this Court's supplemental jurisdiction.

6. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

7. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391, as the events complained of herein occurred in the City of Harrisburg, Dauphin County, in the Commonwealth of Pennsylvania, and the Defendants reside

or have places of business within the boundaries of the Middle District of Pennsylvania.

### III.   PARTIES

8.   Plaintiff is an adult citizen of the United States. He resides in Big Cove Tannery, an unincorporated community in Fulton County, Pennsylvania.

9.   Harrisburg Bureau of Police Officer Marc Howell ("Defendant Howell") was, at all relevant times, an employee of the City of Harrisburg Bureau of Police holding the rank of Police Officer.

10.   Harrisburg Bureau of Police Officer Esteban Restrepo ("Defendant Restrepo") was, at all relevant times, an employee of the City of Harrisburg Bureau of Police holding the rank of Police Officer.

11.   Harrisburg Bureau of Police Officer Cynthia Kreiser ("Defendant Kreiser") was, at all relevant times, an employee of the City of Harrisburg Bureau of Police holding the rank of Police Officer.

12.   At all relevant times between September 29, 2017, and the present, Thomas Carter ("Defendant Carter") has served as Police Commissioner of the City of Harrisburg Bureau of Police.

13.   At all times relevant to this Complaint, Defendants Howell, Restrepo, Kreiser, and Carter (together "Defendants") were acting within the course and scope of their employment and under the color of state law.

14. Defendants are sued in their individual capacities.

## IV. STATEMENT OF FACTS

15. On the evening of March 15, 2025, Plaintiff, his sister, Isabella Burch, and a friend visited establishments on 2nd Street in Harrisburg, PA.

16. At some point in the evening, the group entered Nocturnal, a nightclub located at 236 N 2nd Street in Harrisburg, PA.

17. At approximately 11:30 p.m., two Nocturnal employees approached Plaintiff and asked to speak to him. Plaintiff followed the employees to a back stairway, accompanied by his sister and friend.

18. The employees informed Plaintiff that he must leave the nightclub. The employees informed Plaintiff that the decision was related to Plaintiff's conduct at a past visit to Nocturnal.

19. Plaintiff agreed to leave the nightclub after being directed to leave. However, Plaintiff asked the employees if he could wait a minute or two so that his friend could retrieve her coat. The employees refused to allow Plaintiff to wait, stating that he had to leave or else they would put hands on Plaintiff.

20. Plaintiff was escorted down the stairway. Plaintiff again tried to wait for his companions. This resulted in an employee pushing Plaintiff down the stairs and out the door.

21. Plaintiff raised his voice, objecting to being touched, and was subsequently placed in a headlock by the employee. A police officer directed the employee to release Plaintiff, which the employee did.

22. Officers Marc Howell, Esteban Restrepo, and Cynthia Kreiser were stationed outside Nocturnal when Plaintiff was escorted out.

23. Upon exiting the nightclub, Officer Kreiser pointed OC[1] spray at Plaintiff's face and directed him to leave the area. Plaintiff complied and walked down the street. Plaintiff stopped at the corner of North 2nd and Pine Street to wait for his companions.

24. While standing on the public sidewalk on the corner of North 2nd and Pine Street, Justin Browning, owner of Nocturnal, approached Plaintiff. Mr. Browning told Plaintiff to "get the fuck off my property." Plaintiff took a step off the sidewalk and into the street.

25. At this point, Officer Marc Howell briskly walked to the corner of North 2nd and Pine Street and violently pushed Plaintiff toward the traffic light pole. Officer Howell pursued Plaintiff as he stumbled and then pushed Plaintiff further into 2nd Street.

---

[1] OC spray stands for oleoresin capsicum spray, more commonly referred to as "pepper spray."

26. Officer Howell continued pushing Plaintiff deeper into the street before taking Plaintiff to the ground in the middle of the street through use of a trip, nearly causing Plaintiff's head to be crushed by an on-coming vehicle.

27. Officer Restrepo arrived at the scene and grabbed Plaintiff by the chin and neck. Officer Restrepo then dragged Plaintiff a few feet. Officers Restrepo and Howell then put Plaintiff into handcuffs.

28. While Officers Howell and Restrepo engaged Plaintiff, Officer Kreiser slowly pursued while pointing her OC spray in Plaintiff's direction.

29. When Officer Howell and Officer Restrepo had Plaintiff on the ground in the middle of the street, Plaintiff's companions ran over to the area. Officer Kreiser then forcibly pushed the two women out of the area and threatened to use her OC spray on them. Officer Kreiser struck Plaintiff's friend in the throat.

30. Officers Howell and Restrepo arrested Plaintiff and took him to Dauphin County Prison. Plaintiff was released one hour later.

31. Officer Howell filed a criminal complaint against Plaintiff in Magisterial District Court on March 16, 2025. The criminal complaint charged Plaintiff with violating 18 Pa. C.S. § 5503(a)(1) and (b) (Disorderly Conduct Engage in Fighting), and 18 Pa. C.S. § 5505 (Public Drunkenness).

32. At the preliminary hearing on May 19, 2025, Magisterial District Judge Mikaela M. Sloan dismissed all charges asserted again Plaintiff.

**COUNT I**
**VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983**
**(Plaintiff v. Defendant Howell and Defendant Restrepo)**

33. All preceding paragraphs are incorporated as if fully set forth herein.

34. The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the same, protects individuals from unreasonable searches and seizures.

35. The use of excessive force by a law enforcement officer is considered a "seizure" within the meaning of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 395 (1989).

36. A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002).

37. Officer Howell used excessive force when he violently pushed Plaintiff into the street, tripped Plaintiff, and handcuffed Plaintiff when Plaintiff was not fleeing arrest and posed no threat to officers or others.

38. Officer Restrepo used excessive force when he grabbed and dragged Plaintiff by the neck and handcuffed Plaintiff when Plaintiff was not fleeing arrest and posed no threat to officers or others.

39. As a proximate result of Defendants Howell and Restrepo's actions, Plaintiff suffered physical harm, humiliation, and emotional suffering.

40. Plaintiff's right to be free from excessive force was clearly established at the time of the incident.

### COUNT II: VIOLATION OF THE FOURTH AMENDMENT FOR FAILURE TO INTERVENE
### 42 U.S.C. § 1983
### (Plaintiff v. Defendant Kreiser)

41. All preceding paragraphs are incorporated as if fully set forth herein.

42. Police officers have a duty to "take reasonable steps to protect a victim from another officer's use of excessive force" if "there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

43. Officer Kreiser witnessed Officers Howell and Restrepo violate the Fourth Amendment when they used excessive force on Plaintiff.

44. Officer Kreiser was in a position to intervene to prevent the harm imposed by Officers Howell and Restrepo.

45. Instead of intervening to protect Plaintiff, Officer Kreiser pushed and threatened to pepper spray Plaintiff's sister and friend.

46. As a direct and proximate result of Defendant Kreiser's failure to intervene, Plaintiff suffered damages.

### COUNT III: VIOLATION OF THE FOURTH AMENDMENT FOR SUPERVISORY LIABILITY
### 42 U.S.C. § 1983
### (Plaintiff v. Defendant Carter)

47. All preceding paragraphs are incorporated as if fully set forth herein.

48. Individual defendants who are policymakers may be liable under 42 U.S.C. § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Supervisors may also be liable if the supervisor "as the person in charge, had knowledge of and acquiesced in his subordinates' violation." *Id.*

49. On or about Friday, September 29, 2017, City of Harrisburg Bureau of Police Commissioner Thomas Carter, alongside then-mayor of the City of Harrisburg, Eric Papenfuse, announced the creation of a program to station police officers on 2nd Street for four (4) hours on Friday and Saturday nights (hereinafter "the 2nd Street Support Program").

50. Under the 2nd Street Support Program, approximately 6 to 10 police officers served as additional security to address rowdy patrons and others outside of bars and restaurants along 2nd Street in the late-night hours. Overtime pay for the police officers stationed under the program was paid for by contributions from the bar owners.

51. In the years prior to March 15, 2025, Officers Howell and Restrepo were involved in multiple incidents involving allegations of excessive force outside of bars and restaurants on 2nd Street while working for the 2nd Street Support

Program. At least one of the incidents is subject to ongoing litigation in this Court's jurisdiction.

52. By March 15, 2025, Commissioner Carter was made aware of the multiple excessive force complaints made against Officers Howell and Restrepo related to the 2nd Street Support Program.

53. Notwithstanding his knowledge of the risks posed to individuals by Officers Howell and Restrepo's repeated conduct, Commissioner Carter continued to assign Officers Howell and Restrepo to the 2nd Street Support Program.

54. Multiple media outlets reported on the instant incident in late March 2025. It was not until a video of the instant incident was widely publicized on the news and on social media that Commissioner Carter acted.

55. On or about March 22, 2025, Commissioner Carter ended the 2nd Street Support Program. According to an interview given by Commissioner Carter to PennLive: "having off-duty officers using city equipment to enforce security outside of bars among inebriated patrons is too much of a liability."

56. By maintaining the 2nd Street Support Program despite known risks, and/or by assigning Officers Howell and Restrepo to the program, Commissioner Carter is personally responsible for the constitutional violation imposed upon Plaintiff and exhibited deliberate indifference to constitutional rights.

57. Plaintiff's right to be free from excessive force was clearly established at the time of the incident.

58. As a proximate result of Defendant Carter's actions, Plaintiff suffered physical harm, humiliation, and emotional suffering.

## COUNT IV: ASSAULT AND BATTERY
### Pennsylvania Common Law
### (Plaintiff v. Defendant Howell and Defendant Restrepo)

59. All preceding paragraphs are incorporated as if fully set forth herein.

60. By causing imminent apprehension of harm, and by pushing Plaintiff, throwing Plaintiff to the ground, and by dragging Plaintiff by his neck, Officers Howell and Restrepo intended to cause Plaintiff harm and committed the torts of assault and battery under Pennsylvania law.

61. Officers Howell and Restrepo's use of force was unreasonable and excessive under the circumstances.

62. Officers Howell and Restrepo's conduct constitutes a crime, actual malice, and willful misconduct as those terms are used in the Pennsylvania Political Subdivision Tort Claims Act. 42 Pa. C.S. § 8542(a)(2).

63. As a direct and proximate result of Defendants Howell and Restrepo's conduct, Plaintiff suffered damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests this Court to enter judgment in his favor and against all Defendants and requests that this Court:

a) Award traditional tort remedies such as compensatory damages against all Defendants;

b) Award punitive damages against Officer Howell and Officer Restrepo;

c) Award prevailing party attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

d) Award pre- and post-judgment interest at the lawful rate; and

e) Order other relief that the Court deems just and proper under either law or equity.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury with respect to the claims and relief set forth herein.

Respectfully submitted,

Dated: September 3, 2025

*/s/ Scott P. Stedjan*
Scott P. Stedjan, Esquire
Pa. I.D. # 318851
Killian & Gephart, LLP
218 Pine Street
Harrisburg, PA 17101
sstedjan@killiangephart.com
Tel: (717) 232-1851
Fax: (717) 238-0592
*Counsel for Plaintiff*