## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARTER BURCH, | : | |
| | : | |
| Plaintiff, | : | No.: 1:25-CV-01640-JPW |
| v. | : | |
| | : | |
| CITY OF HARRISBURG | : | **Jury Trial Demanded** |
| BUREAU OF POLICE OFFICER | : | |
| MARC HOWELL et al. | : | |
| Defendants. | : | |

## <u>DEFENDANTS' OFFICER KREISER, COMMISSIONER CARTER and CORPORAL RESTREPO'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………iii

I.    STATEMENT OF FACTS………………………………………………...1

    A. General Facts……………………………………………………...1

    B. Officer Kreiser…………………………………………………….2

    C. Commissioner Carter…………………………………………......3

    D. Corporal Restrepo………………………………………………...4

II.    LEGAL STANDARD…………………………………………………....5

III.    LEGAL ARGUMENT……………………………………………………6

    A. **The Failure to Intervene Claim Against Officer Kreiser Fails (Count II)** ……………………………………………………6

    B. **The Supervisory Claim Against Commissioner Carter Fails (Count III)**……………………………………………………9

    C. **Burch's 4th Amendment Claim Against Restrepo Fails (Count I)**…………………………………………………………..13

    D. **Alternatively, Commissioner Carter, Officer Kreiser, and Corporal Restrepo are entitled to Qualified Immunity**…………16

        1. **Officer Kreiser**………………………………………..17

        2. **Commissioner Carter**………………………….………..17

        3.  **Corporal Restrepo**………………………………...18

    E. **The Assault and Battery Claim Against Corporal Restrepo Fails**………………………………………………………19

IV.    **Conclusion**………………………………………………...19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abraham v. Raso,* 183 F.3d 279, (3d Cir.1999) ................................................................. 18

*Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, (3d Cir. 2011)* ............... 14

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, (2009) ................................... passim

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) ................................................... 9

*City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, (U.S. 2015) ............... 20

*El v. City of Pittsburgh, 975 F.3d 327, (3rd Cir. 2020)* ................................................. 10

*Evancho v. Fisher*, 423 F.3d 347, (3rd Cirr. 2005) ....................................................... 13

*Fowler v. UPMC Shadyside*, 578 F.3d 203, (3d Cir. 2009) ........................................... 10

*Graham v. Connor*, 490 U.S. 386, 394-95 (1989) ............................................... 17, 18, 19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed.2d (1982) ...................................... 20

*J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, (3d Cir. 2004)* ..................... 14

*Kopec v. Tate*, 361 F.3d (3rd Cir. 2004) ...................................................................... 19

*Maio v. Aetna, Inc.,* 221 F.3d 472, (3d Cir. 2000) ........................................................ 9

*Pearson v. Callahan*, 555 U.S. 223, 243-244 (2009) ................................................... 20

*Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023, 188 L.Ed.2d (U.S. 2014) ........................ 20

*Ricks v. Shover*, 891 F.3d (3rd Cir. 2018) ............................................................... 11, 12

*Rode v. Dellarciprete,* 845 F.2d, 845 F.2d 1195, (3rd Cir. 1998) .............................. 13, 14

*Sample v. Diecks*, 885 F.2d 1099, (3rd Cir. 1989) ........................................................ 14

*Santiago v. Warminster Township.*, 629 F.3d 121, (3rd Cir. 2010) ............................ 13, 17

*Small v. Kauffman*, 2021 U.S.Dist. LEXIS 232206, *14 (M.D.PA, 20-cv-1242 December 3, 2021) ................................................................................................................... 14, 17

*Smith v. Mensinger*, 293 F.3d (3rd Cir. 2002) .............................................................. 10

*Stanley Taylor, et. al. v. Karen Barkes, et. al.*, 135 S.Ct. 2042, (U.S. 2015) .............. 20

*Sturm v. Clark*, 835 F.2d 1009, (3d Cir. 1987) .............................................................. 9

*Terry v. Ohio,* 392 U.S. 1, 22-27, 88 S.Ct. 1868, 20 L.Ed.2d (1968) ........................... 18

*Williams v. City of York*, 967 F.3d (3rd Cir. 2020) ....................................................... 19

*Williams v. Papi*, 714 Fed. Appx. 128, (3rd Cir. 2017) .............................................. 14

*Wood v. Moss*, 134 S.Ct. 2056, (U.S. 2014) ............................................................... 20

*Z.H. v. Olivia*, 226 F.3d 198, (3rd Cir. 2000) .............................................................. 15

**Statutes**

18 Pa.C.S. § 508(a)(1) .................................................................................................. 18

18 Pa.C.S.A. §508 ......................................................................................................... 23

**Rules**

*Fed. Rule Civ. Proc. 8(a)(2)* ....................................................................................... 18

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARTER BURCH, | : | |
| | : | |
| Plaintiff, | : | No.: 1:25-CV-01640-JPW |
| v. | : | |
| | : | |
| CITY OF HARRISBURG | : | **Jury Trial Demanded** |
| BUREAU OF POLICE OFFICER | : | |
| MARC HOWELL et al. | : | |
| Defendants. | : | |

## DEFENDANTS' OFFICER KREISER, COMMISSIONER CARTER and CORPORAL RESTREPO'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

Defendants, Officer Kreiser, Commissioner Carter, and Corporal Restrepo, ("Moving Defendants") by and through their undersigned Counsel, Bellwoar Kelly, LLP, file this Brief in support of their Motion to Dismiss Plaintiff's Complaint (ECF 1) and in support thereof aver as follows:

I.    **STATEMENT OF FACTS[1]**

A.    **General Facts**

Plaintiff, Carter Burch "Burch" and his sister, Isabella Burch visited Nocturnal Nightclub in Harrisburg, Pennsylvania on March 15th, 2025. Cmplt.

---

[1] Taking the allegations of the Complaint as true, without admitting the same, for purposes of this Motion only.

¶¶15,16.  At approximately 11:30 PM two employees of the Nocturnal Nightclub approached Burch to speak with him. Cmplt. ¶17.  The employees informed Burch that he must leave the nightclub due to an issue with his conduct on a prior visit. Cmplt. ¶18. Burch agreed to leave the nightclub "after being directed to leave" but the employee refused to let him stay longer so his friend could retrieve her coat. Cmplt. ¶19.  Burch was escorted down the stairway and pushed down the stairs and out the door by the employee.  Cmplt. ¶20.  Burch was placed in a head lock by an employee after raising his voice. Cmplt. ¶23.   Burch was released after a police officer directed the employee to do so. Cmplt. ¶21. Officers Howell, Restrepo and Kreiser were stationed outside Nocturnal when Burch was escorted out. Cmplt. ¶22.

B.    **Officer Kreiser**

After exiting the club, Officer Kreiser "pointed OC spray at plaintiff's face", directing him to leave the area. Cmplt. ¶23.  Burch complied and walked down the street, stopping at the corner of N 2nd and Pine St. to wait for his companions. Cmplt. ¶23.  Nocturnal's owner told Burch to "get the fuck off my property".  Cmplt. ¶24. Officer Howell then pushed Burch toward the traffic light pole and pursued him as he stumbled, pushing Burch further into the street.  Cmplt. ¶25.  Burch was taken to the ground by Howell "through the use of a trip, nearly causing Plaintiff's head to be crushed by an on-coming vehicle".  Cmplt. ¶26  Officer Restrepo dragged Burch

by the chin and neck a few feet. Cmplt. ¶27. Burch was placed into handcuffs. Cmplt. ¶27.

Officer Kreiser slowly pursued pointing her OC spray in Burch's direction. Cmplt. ¶28. Burch's companions "ran over to the area" while Burch was on the ground. Cmplt. ¶29. Officer Kreiser pushed the two women out of the area and threatened to use OC spray on them. Officer Kreiser struck Burch's friend in the throat.¶29.

### C.    Commissioner Carter

At the outset, the Complaint lacks any allegations that Commissioner Carter was at the scene of the incident. See, Cmplt. Rather, Burch asserts the following:

In 2017, Commissioner Carter along with Harrisburg's former Mayor, announced the creation of a program to station police officers on 2nd St in Harrisburg. Cmplt. ¶49. This program was named the 2nd Street Support Program[2] (the "Program"). Cmplt. ¶49. Under the Program, approximately 6 to 10 officers served as added security to address rowdy patrons outside of bars along 2nd St. Cmplt. ¶50. Overtime pay for the officers was paid for by contributions from the bar owners. Cmplt. ¶50. By March 15th, 2025, Commissioner Carter was made aware of multiple excessive force complaints made against officers Howell and

---

[2] Plaintiff's designation, which will be reference for purposes of this motion only, without admitting the same.

Restrepo related to the Program. Cmplt. ¶52.  One incident was subject of ongoing

litigation.  Cmplt. ¶51.  Commissioner Carter continued to assign Officers Howell

and Restrepo to the Program. Cmplt. ¶53.

Commissioner Carter ended the Program on March 22, 2025. Cmplt. ¶55.

according to a Penn Live interview, the program was ended as "having off duty

officers using city equipment to enforce security outside of bars among inebriated

patrons is too much of a liability".  Cmplt. ¶55[3].

### D.    **Corporal Restrepo**

Burch was caused to be taken to the ground in the middle of the street by the

use of a "trip" by officer Howell nearly causing plaintiff's head to be crushed by an

oncoming vehicle. Cmplt. ¶26.

Officer Restrepo arrived at the scene, grabbed plaintiff by the chin and neck

and dragged him a few feet. Cmplt. ¶27.  Officers Restrepo and Howell placed Burch

in handcuffs. Cmplt. ¶27.  Officers Howell and Restrepo arrested Burch and took

---

[3]  Plaintiff omitted the link to the referenced article, located at
https://www.pennlive.com/crime/2025/03/off-duty-harrisburg-police-yanked-from-
downtown-detail-after-viral-video.html.  To put Plaintiff's limited quote from this
article into proper context, the article provides in pertinent part as follows:  "Police
Commissioner Thomas Carter said police will continue to respond to any calls for
service downtown as they always have. He said state police and capitol police will
continue to assist the city along North Second Street as they have in prior years.
But having off-duty officers using city equipment to enforce security outside of bars
among inebriated patrons is too much of a liability, Carter said."

him to the Dauphin County prison. Cmplt. ¶30. He was released one hour later. Cmplt. ¶30.

II.   **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b) tests the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). A motion to dismiss for failure to state a claim may be granted if, after accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the non-moving party, plaintiff is not entitled to relief. *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir. 2000).

Although a complaint need not contain detailed factual allegations, it must have more than unadorned, "defendant-unlawfully-harmed-me" type of accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The district court is to engage in a two-step inquiry to determine the sufficiency of the facts alleged in a complaint:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for

relief." Id. at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief . . .. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The assumption of truth does not apply to legal conclusions couched as factual allegations, or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## III.  **LEGAL ARGUMENT**

### A. <u>The Failure to Intervene Claim Against Officer Kreiser Fails (Count II)</u>

While this Circuit permits liability against an officer for failing to intervene in an excessive force matter, an officer will only be liable if there is a realistic and reasonable opportunity to intervene. *Smith v. Mensinger*, 293 F.3d 641 (3rd Cir. 2002). An officer's failure to stop an ongoing constitutional violation violates one's rights when she "had a reasonable opportunity to intervene and simply refused to do so." *Smith at 650-51*. Based upon the facts alleged, even assuming an underlying unconstitutional violation (denied), Officer Kreiser did not have a realistic and reasonable opportunity to intervene.

This Circuit has also noted that the "duration of the incident is key to determining whether there was a reasonable opportunity" to intervene. *El v. City of*

*Pittsburgh, 975 F.3d 327, 335 (3rd Cir. 2020).* Additionally, an incident's brevity may defeat a failure to intervene claim. See, e.g. *Ricks v. Shover*, 891 F.3d 468 (3rd Cir. 2018) (affirming dismissal of a failure to intervene claim where the alleged violation was *over before* Ricks called out to Shover.)

A review of the pertinent conduct alleged involving Officer Kreiser reveals as follows:

- Officers Howell, Restrepo and Kreiser were stationed outside Nocturnal Nightclub;

- Officer Kreiser "pointed" OC Spray at Plaintiff and directed him to leave the area;

- Officer Howell pushed Burch toward the traffic light pole and as he stumbled, Officer Howell pushed him again;

- Officer Howell used a "trip" to take him to the ground;

- Officer Restrepo arrived on scene and dragged Burch by the chin and neck a few feet;

- Officer Kreiser slowly pursued while pointing OC in plaintiff's direction; and

- "While Officer Howell and Officer Restrepo had Plaintiff on the ground", "Plaintiff's companions ran over to the area." Officer Kreiser pushed the two women out of the area and threatened to use OC spray on them.

The allegations regarding Officer Kreiser's actions, compared with the timing of the swiftly moving events, fail to support that Officer Kreiser had a realistic and reasonable opportunity to intervene. After Howell's push, she is alleged to have

*pointed* OC spray in Burch's *direction*.   Yet, as alleged,  he was already on the ground.  And, after Burch was already on the ground, Burch's companions ran to the area, causing Officer Kreiser to push the women away.   Taking the allegations as true, her attentions were focused on crowd control <u>after</u> Burch was on the ground being detained.   Therefore, either the alleged violative conduct was already over; or she had no realistic or reasonable opportunity to intervene.

Notably, Burch fails to give an account or timing of the quickly evolving events -- between the push, trip, dragging and handcuffing of Burch.  Even without such factual allegations, what is pled confirms that Burch was already on the ground being detained/handcuffed by Officers Howell and Restrepo when Officer Kreiser approached.  To add to this, based upon the allegations, Officer Kreiser's attention was directed to controlling the scene with two women admittedly 'running' to the area whom she confronted.  This fails to provide a reasonable or realistic opportunity to intervene, even assuming the alleged violative event had not already concluded.

As noted in *Ricks*, and based upon the pertinent facts, Officer Kreiser had neither a reasonable nor realistic opportunity to intervene.  The brevity of the event, and the fact that the claimed violative conduct ended *before* Officer Kreiser's approach, and her need to act as an intermediary between two women "running" to the scene, requires this Court to dismiss the failure to intervene claim against Officer Kreiser, with prejudice.

B.    **The Supervisory Claim against Commissioner Carter Fails (Count III)**

The Third Circuit has acknowledged two theories of supervisory liability. These include (a) establishing that a supervisor established and maintained a policy, practice or custom which directly caused the constitutional harm; or if the supervisor participated in violating plaintiff's rights; directed others to violate them or had knowledge of or acquiesced in the subordinates' violations. *Santiago v. Warminster Township*., 629 F.3d 121, 129 n. 5 (3rd Cir. 2010).   The allegations supporting such a claim must be made with appropriate particularity, alleging conduct time, place and person responsible.  *Evancho v. Fisher*, 423 F.3d 347,354 (3rd Cirr. 2005); *Rode v. Dellarciprete,* 845 F.2d, 845 F.2d 1195, 1207-08 (3rd Cir. 1998).

*Santiago* was decided in 2010, a year after *Aschroft v. Iqbal*, 556 U.S. 662 (2009) (which questioned the continued viability of supervisory liability claims in *Bivens* actions.) More recently, this Circuit has questioned the viability of supervisory liability claims in general noting:

> This Court has noted that there exists "uncertainty as to the viability and scope of supervisory liability" after the Supreme Court's decision in *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*, arguably narrowed or abrogated the ability to find a supervisor liable for conduct of which he was merely aware but did not direct. *Santiago v. Warminster Twp., 629 F.3d 121, 130 n.8 (3d Cir. 2010)*. Although we have not yet squarely addressed the extent of Iqbal's impact on the theory of supervisory liability, we have repeatedly held that "[i]t is

> uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 71 (3d Cir. 2011)*. Such personal involvement may be established by alleging that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)*.

*Williams v. Papi*, 714 Fed. Appx. 128, 133 (3rd Cir. 2017) (*Non-Precedential*). Yet, the Third Circuit also recognized, even assuming such a claim may proceed, there must be some type of personal involvement. When it comes to pleading personal involvement, this Court previously noted:

> Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.

*Small v. Kauffman*, 2021 U.S.Dist. LEXIS 232206, *14 (M.D.PA, 20-cv-1242 December 3, 2021) citing *Rode* at 1208. While the term personal involvement may not have a universal definition, in order for a supervisory capacity claim to proceed, Plaintiff must provide well-pled allegations that the Commissioner was deliberately indifferent to the deprivation of plaintiff's constitutional rights. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3rd Cir. 1989). Furthermore, to establish knowledge and acquiescence of a subordinates' conduct, (Howell and Restrepo), Plaintiff must allege the Commissioner's contemporaneous knowledge of this incident or

"knowledge of similar incidents in the past"; and "actions or inactions which communicated approval" of the subordinates' behavior. *C. H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 202 (3rd Cir. 2000).

Therefore, this court must determine what allegations are conclusory and must be disregarded, as opposed to those which are well-pled factual allegations which must be accepted as true. Despite Commissioner Carter's assertion that Plaintiff's allegations are conclusory and fail to establish any personal involvement, he will address the allegations.

Burch asserts a claim based upon the theory that Commissioner Carter acted with deliberate indifference to policies; and/or that he had knowledge of an acquiesced a subordinate's action. Cmplt. ¶48. He alleges as follows:

> 56.    By maintaining the 2nd Street Support Program despite its known risks, and/or assigning Officers Howell and Restrepo to the program, Commissioner Carter is personally responsible for the constitutional violation imposed upon Plaintiff and exhibited deliberate indifference to constitutional rights.

Cmplt. ¶56.

This allegation is nothing more than a formulaic conclusion of law which is not entitled to being accepted as true. *Iqbal* at 1950. A further review of the Complaint fails to evidence any well-pled fact that would plausibly demonstrate that the Commissioner has personal involvement or directed the Defendant Officers to conduct themselves in such a manner that he knew or should have known would

cause a deprivation of Plaintiff's constitutional rights.

To overcome the stringent standard, Burch provides only a hypothesis of events that would place the Commissioner on notice of "known risks" involving Officers Howell and Restrepo. Plaintiff's attempt fails for several reasons. First, there are no well-pleaded facts to support the Commissioner's knowledge of these alleged events by and through and actions or inactions which would communicate approval of Howell or Restrepo's behavior.

Second, there's no well-pleaded facts that the incidents "involving ***allegations*** of excessive force" Cmplt. ¶51 (emphasis added) were deemed to be excessive force or the type that would have put the Commissioner on notice of constitutionally violative acts by Howell or Restrepo. Third, Plaintiff references an incident subject to "ongoing litigation". Cmplt. ¶51. While not identified, it is believed the ongoing litigation is a lawsuit filed on March 18, 2025, a day **after** the incident complained of herein[4]. Therefore, the later filed lawsuit cannot be supportive of a "known risk". Accordingly, there are no well plead facts to support Commissioner Carter's knowledge or acquiescence of either Howell or Restrepo's misconduct as alleged herein.

Additionally, Burch fails to detail other violative conduct and/or policy

---

[4] *Watkins v. Howell*, et al., M.D. Pa. 25-cv-00495.

violations of the kind Burch asserts; nor any facts of the Commissioner's actual knowledge and acquiescence of such conduct.  Instead, and like the insufficient allegations in *Iqbal*, *Santiago* and *Small*, the allegations asserted in the Complaint are nothing more than formulaic recitations of the elements of a claim, not entitled to the assumption of truth, requiring dismissal of the Supervisory Capacity claim, with prejudice.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."  *Fed. Rule Civ. Proc. 8(a)(2)*."  *Iqbal* at 1950.  Here, the allegations fail to provide a plausible nexus or affirmative link between any acts, or alleged knowledge of the specific deprivation of constitutional rights at issue.  As no deliberate indifference has been established by virtue of the allegations, the Supervisory Liability claim against Commissioner Carter must be dismissed as a matter of law.

### C.    Burch's 4th Amendment Claim against Restrepo Fails (Count I)

A claim that a law enforcement officer used excessive force during an arrest is analyzed under the reasonableness standard prescribed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Whether an intentional use of force by a police officer is permissible under the Fourth Amendment requires an objective reasonableness inquiry and "careful attention to the facts and circumstances of each particular case, including… whether [the suspect] is actively

resisting or attempting to evade arrest by flight." *Graham,* 490 U.S. at 399; see also, *Abraham v. Raso,* 183 F.3d 279, 290 (3d Cir.1999). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22-27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Courts are required to evaluate the reasonableness of the force used "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. The determination of reasonableness must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397. The Supreme Court aptly has observed that "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Graham, supra*, at 396.

Furthermore, a law enforcement officer in Pennsylvania is permitted to use force which is necessary to effect an arrest.

> A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest.

18 Pa.C.S. § 508(a)(1).

The pertinent allegation against Officer Restrepo is that he used excessive force "when he grabbed and dragged Plaintiff by the neck and handcuffed Plaintiff when Plaintiff was not fleeing arrest and posed no threat to the officers or others." Cmplt. ¶38. The allegations of the dragging and handcuffing, the alleged excessive force, will be addressed in reverse.

First, as to the handcuffing, Plaintiff fails to allege that he was improperly handcuffed or was in pain. He only referenced that he was handcuffed. Absent a complaint of pain, an officer will not be liable on a claim that handcuffing constituted excessive force. See, *Williams v. City of York*, 967 F.3d 252 (3rd Cir. 2020), *Kopec v. Tate*, 361 F.3d 772 (3rd Cir. 2004).

Second, as to the grabbing and dragging of Burch, the allegations cannot be taken in a vacuum. Burch asserts that Officer Howell pushed and tripped him in the middle of the street "nearly causing Plaintiff's head to be crushed by an oncoming vehicle." Cmplt. ¶26. After he was in the street, Restrepo is alleged to have dragged him a few feet. Restrepo dragged him to keep his head from being placed in oncoming traffic which coincides with the allegation Restrepo grabbed Burch by the "chin and neck". Therefore, even assuming these actions as true, the allegations fail to support that officer Restrepo's conduct constituted excessive force. As it is known, not all pushes or shoves constitute excessive force, and the standard of reasonableness applies where officers are often forced to make split second

judgments.  See, *Graham*, supra.   Corporal Restrepo's actions, having been made in split second judgment, to move Plaintiff's head from what he himself described as being in traffic, did not constitute excessive force.

As Burch fails to allege sufficient factual allegations against Officer Restrepo for a 4th Amendment violation, the claim against him must be dismissed, as a matter of law.

### D.    Alternatively, Commissioner Carter, Officer Kreiser and Corporal Restrepo are entitled to Qualified Immunity

Alternatively, Commissioner Carter, Officer Kreiser and Corporal Restrepo are entitled to qualified immunity.

Government officials performing discretionary functions are generally shielded from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity: (1) whether the facts alleged by the plaintiff show a violation of a constitutional right; and (2) whether the right at issue is clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 243-244 (2009); The "clearly established right" cannot be general but must be particularized to the facts of the specific case. *Wood v. Moss*, 134 S.Ct. 2056, 2068 (U.S. 2014) *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (U.S. 2014) *Stanley Taylor, et. al. v. Karen Barkes, et. al.*, 135 S.Ct. 2042, 2044 (U.S. 2015) and *City and County of San Francisco v. Sheehan*, 135 S.Ct.

1765, 1776-1777 (U.S. 2015).

Applying the two-prong test, the well-pleaded material facts fail to support any constitutional violation by Commissioner Carter, Officer Kreiser or Corporal Restrepo, nor any violation of any clearly established rights.

### 1.    **Officer Kreiser**

As argued above, Officer Kreiser's actions toward Plaintiff did not constitute a constitutional violation.  Alternatively, no clearly established right was violated. As it relates to Officer Kreiser, it was not clearly established that she must intervene in conduct of other officers when faced with two women running toward the scene. This is especially true where the facts as alleged confirm that the event of which Plaintiff complained was already over. Therefore, Officer Kreiser is entitled to qualified immunity.

### 2.    **Commissioner Carter**

Plaintiff asserts a claim against Commissioner Carter for Supervisory Liability.  However, Plaintiff generally alleges all defendants are being sued in their individual capacity.  Cmplt. ¶14.  Therefore, Commissioner Carter alternatively asserts the defense of qualified immunity.

For the reasons set forth above, the well-pleaded facts fail to support a constitutional violation by Commissioner Carter.  Alternatively, there was no violation of Plaintiff's clearly established rights.  The question here is not whether

there is a clearly established right to be free from excessive force (which is not disputed); but whether Plaintiff's rights were clearly established where Plaintiff bases his allegations of the Commissioner's knowledge of "known risks" on "allegations" or a lawsuit filed <u>after</u> this incident occurred. Defendant asserts it was not clearly established that such bald and conclusory allegations, even taken as true, support his knowledge or acquiescence and therefore fail to support any deliberate indifference. Therefore, Commissioner Carter is alternatively entitled to Qualified Immunity.

### 3. Corporal Restrepo

An officer is permitted to use that force which is necessary to effectuate an arrest. And, while it is clearly established that the use of excessive force is impermissible, it is denied that the conduct of Corporal Restrepo constituted excessive force or violated any clearly established right of Plaintiff.

Officer Restrepo's involvement began after Officer Howell is alleged to have pushed and tripped Burch and he was already on the ground. Even assuming that Howell violated Burch's rights (denied), Officer Restrepo is then claimed to have dragged Burch a few feet – after he was on the ground and after he claimed his head was nearly crushed by an oncoming vehicle. The allegations, even taken as true, fail to support a clearly established right of Burch which Officer Restrepo violated. Being dragged few feet on a street away from traffic, without more, fails to support

a clearly established right which Officer Restrepo allegedly violated. Furthermore, there is no case law to place Officer Restrepo on notice that his quick decision to drag Plaintiff from the flow of traffic constituted a violation. Therefore, he is entitled to qualified immunity.

E. **The Assault and Battery Claim Against Corporal Restrepo Fails**

As noted above, an officer is permitted to use that force which is necessary to make an arrest; "and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest." 18 Pa.C.S.A. §508. While it is not disputed for purposes of this motion that Cpl. Restrepo dragged Plaintiff a few feet, Plaintiff states his head was almost run over by an oncoming vehicle before Cpl. Restrepo arrived at the scene. Accordingly, Cpl. Restrepo's actions fell within 508 of using force, which was necessary to defend Plaintiff from bodily harm, in moving his head away from on-coming traffic.

Therefore, Plaintiff's assault and battery claim against Cpl. Restrepo should be dismissed.

## IV. CONCLUSION

For the reasons set forth in their Motion to Dismiss, and argued herein, the claims against Defendants Cpl. Restrepo, Officer Kreiser and Commissioner Carter must be dismissed, as a matter of law.

**BELLWOAR KELLY LLP**

Date:  November 21, 2025          By:    */s/ Sheryl L. Brown*
                                 Sheryl L. Brown, Esquire, I.D. #59313
                                 Attorney for Defendants Commissioner
                                 Carter, Cpl. Restrepo and Officer Kreiser
                                 126 W. Miner Street, #1
                                 West Chester, PA  19382
                                 (p) 610-314-7066
                                 sbrown@bellwoarkelly.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARTER BURCH, | : | |
| | : | |
| Plaintiff, | : | No.: 1:25-CV-01640-JPW |
| v. | : | |
| | : | |
| CITY OF HARRISBURG | : | **Jury Trial Demanded** |
| BUREAU OF POLICE OFFICER | : | |
| MARC HOWELL et al. | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a true and correct copy of the Defendants, Police Commissioner Carter, Cpl. Restrepo and Officer Kreiser's Brief in Support of their Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) was served via electronic filing addressed as indicated:

Scott P. Stedjan, Esquire
Killian & Gephart, LLP
218 Pine Street
Harrisburg, PA  17101

Christopher P. Gerber, Esquire
Lamb McErlane PC
24 E. Market St. PO Box 565
West Chester, PA  19381

**BELLWOAR KELLY LLP**

Date:  November 21, 2025

By:   */s/ Sheryl L. Brown*
Sheryl L. Brown, Esquire, I.D. #59313
Attorney for Defendants Commissioner
Carter, Cpl. Restrepo and Officer Kreiser
126 W. Miner Street, #1
West Chester, PA  19382
(p) 610-314-7066
sbrown@bellwoarkelly.com