## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARTER BURCH,** | : | |
| **Plaintiff** | : | |
| | : | No.: 1:25-CV-01640-JPW |
| **v.** | : | |
| | : | JURY TRIAL DEMANDED |
| **CITY OF HARRISBURG** | : | |
| **BUREAU OF POLICE** | : | ELECTRONICALLY FILED |
| **OFFICER MARC S. HOWELL,** | : | |
| **OFFICER ESTEBAN** | : | |
| **RESTREPO, OFFICER** | : | |
| **CYNTHIA KREISER, and** | : | |
| **POLICE COMMISSIONER** | : | |
| **THOMAS CARTER,** | : | |
| **Defendants.** | : | |

## BRIEF OF PLAINTIFF IN OPPOSITION TO DEFENDANTS KREISER, CARTER, AND RESTREPO'S MOTION TO DISMISS

Plaintiff Carter Burch (hereinafter "Mr. Burch") files this brief in response to the Motion to Dismiss filed by Defendant Officers Cynthia Kreiser and Esteban Restrepo and Defendant Commissioner Thomas Carter of the City of Harrisburg Bureau of Police (hereinafter "Moving Defendants"). An additional defendant, Officer Marc Howell, is not party to the instant Motion to Dismiss. For the reasons that follow, Mr. Burch respectfully requests that this Court deny Moving Defendants' Motion.

## I.    BACKGROUND

Mr. Burch initiated this action by filing a Complaint in this Honorable Court on September 3, 2025. (ECF No. 1.) Moving Defendants filed a "Motion to

Dismiss" on November 7, 2025, seeking dismissal of Counts 1-IV of the Complaint as to them.  (ECF No. 13.)

In the Complaint, Mr. Burch alleges as follows: Mr. Burch is an adult citizen of the United States who, along with his sister, Isabella Burch, and another friend, visited the Nocturnal Nightclub in Harrisburg, Pennsylvania at some point during the evening of March 15, 2025.  (ECF No. 1 at ¶¶ 8, 15-16.)  At approximately 11:30 p.m. two employees of the nightclub approached Mr. Burch and his companions and asked to speak to them  (Id. at ¶ 17.)  The employees then informed Mr. Burch that he would have to leave the nightclub due to conduct during a previous visit to the club.  (Id. at ¶ 18.)  Mr. Burch agreed to leave, requesting permission to wait a minute or two for his friend to retrieve her coat before exiting the building.  (Id. at ¶ 19).  The employees refused to allow Mr. Burch to wait and threatened to put hands on him if he did not leave immediately.  (Id.)  The employees then escorted Mr. Burch down the stairway, at one point pushing him further down the stairs and out the door of the building when Mr. Burch again tried to wait for his companions to catch up.  (Id. at ¶ 20).  Objecting to being touched, Mr. Burch raised his voice in protest and was then placed in a headlock by an employee until an unknown police officer directed the employee to release him.  (Id. at ¶ 21).

Defendants Howell, Restrepo, and Kreiser were employed as police officers stationed outside Nocturnal Nightclub as part of "the 2nd Street Support Program," a

program established in September 2017 by Defendant Carter and then-mayor of Harrisburg, Eric Papenfuse, to station police officers on 2nd Street as additional security for the Friday and Saturday night crowds outside the bars and restaurants on 2nd Street. (Id. at ¶¶ 9-11, 22, 49-50.) Once Mr. Burch was outside the nightclub door, Defendant Kreiser pointed OC spray at his face and ordered him to leave the area. (Id. at ¶ 23). Mr. Burch complied, walking down the public sidewalk outside the nightclub to wait for his companions at the corner of North 2nd and Pine Streets. (Id.) As Mr. Burch waited on the sidewalk, Justin Browning, owner of Nocturnal, approached him and shouted at him to "get the fuck off my property." (Id. at ¶ 24.) As Mr. Browning shouted at him, Mr. Burch stepped off the sidewalk and into the street. (Id.)

At this point, Defendant Howell walked towards Mr. Burch at a brisk pace and without warning violently pushed Mr. Burch toward the traffic light pole at the corner of North 2nd and Pine Streets. (Id. at ¶ 25.) Defendant Howell continued to aggressively pursue Mr. Burch as he stumbled from the push and proceeded to push him further into 2nd Street before using a trip to take him to the ground in the middle of the roadway. (Id. at ¶¶ 25-26.) When Defendant Howell took Mr. Burch to the ground, he caused Mr. Burch's head to land in the path of active traffic, nearly crushing Mr. Burch's head under an on-coming vehicle. (Id. at ¶ 26). Defendant Restrepo then arrived at the scene and proceeded to grab Mr. Burch by the chin and

neck and drag Mr. Burch's prone body several feet by the neck before he and Defendant Howell put Mr. Burch into handcuffs.  (Id. at ¶ 27.)

As Defendant Howell approached, shoved, and tripped Mr. Burch and Defendant Restrepo joined the scene to grab Mr. Burch by the neck, Defendant Kreiser slowly pursued while keeping her OC spray pointed at Mr. Burch.  (Id. at ¶ 28.)  When Defendants Howell and Restrepo had Mr. Burch on the ground in the middle of the street, Mr. Burch's companions attempted to run around Defendant Kreiser to the area where Mr. Burch lay as Defendants Howell and Restrepo began forcing him into handcuffs.  (Id. at ¶ 29.)  Defendant Kreiser at this point turned away from Mr. Burch and the other Defendants and forcibly pushed Mr. Burch's companions away, striking Mr. Burch's friend in the throat and threatening to use her OC spray on both women.  (Id.)  Mr. Burch was then arrested by Defendants Howell and Restrepo and taken to Dauphin County Prison before being released one hour later.  (Id. at ¶ 30.)  The next day, March 16, 2025, Defendant Howell filed a criminal complaint against Mr. Burch charging him with violating 18 Pa. C.S. § 5503(a)(1) and (b) (Disorderly Conduct Engage in Fighting), and 18 Pa. C.S. § 5505 (Public Drunkenness).  (Id. at ¶ 31.)  All charges against Mr. Burch were dismissed by Magisterial District Judge Mikaela M. Sloan on May 19, 2025.  (Id. at ¶ 32.)

Since the creation of the 2nd Street Support Program in September 2017, Defendant Carter, City of Harrisburg Bureau of Police Commissioner, had

continually assigned Defendants Howell and Restrepo to the Program, despite being made aware of multiple excessive force complaints against both over the years, at least one of which is currently subject to ongoing litigation. (Id. at ¶¶ 51-53.) In the days after March 15, 2025, multiple media outlets reported on the incident subject to this case, including by sharing video of the arrest. (Id. at ¶ 54.) In response to the public outcry associated with this incident, on March 22, 2025, Defendant Carter announced that he was ending the 2nd Street Support Program, stating that "having off-duty officers using city equipment to enforce security outside of bars among inebriated patrons is too much of a liability." (Id. at ¶ 55.)

Count I of the Complaint alleges that Defendants Howell and Restrepo unreasonably seized Mr. Burch by using excessive force to arrest him when he was not fleeing or resisting arrest and posed no threat to others, causing Mr. Burch physical and emotional harm and humiliation. (Id. at ¶¶ 37-39.) In particular, it alleges that Defendant Restrepo used excessive force by grabbing and dragging Mr. Burch by his neck and then handcuffing him when no such conduct was reasonably necessary under the circumstances. (Id. at ¶ 38.) Count II of the Complaint alleges that Defendant Kreiser violated her duty to take reasonable steps to intervene when witnessing her fellow officers' use of excessive force against Mr. Burch, despite having a reasonable opportunity to do so, and instead acting to threaten Mr. Burch's companions. (Id. at ¶¶ 43-46.) Count III of the Complaint alleges that Defendant

Carter, by establishing and maintaining the 2nd Street Support Program and by assigning Defendants Howell and Restrepo to the Program for years despite his knowledge of the plethora of excessive force complaints against both of them, exhibited deliberate indifference to the risks his Program and the way he operated it posed to innocent citizens, such as Mr. Burch.  (Id. at ¶¶ 49-56.)  Finally, Count IV of the Complaint alleges that Defendants Howell and Restrepo committed intentional assault and battery against Mr. Burch by using excessive and unreasonable force against him when arresting him.  (Id. at ¶¶ 60-62.)

## II.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation omitted).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  First, "the court must 'tak[e] note

of the elements a plaintiff must plead to state a claim." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010). Next, the factual and legal elements of a claim must be separated, and the well-pleaded facts are accepted as true. <u>Id.</u> at 131-32. Third, the court must determine, based on the well-pleaded allegations, whether the allegations are sufficient to show a "plausible claim for relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw **the reasonable inference** that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678 (emphasis added).

## III.    ARGUMENT

### A. <u>Defendants' Motion to Dismiss should be denied because Mr. Burch stated plausible claims for relief.</u>

Moving Defendants allege several alternative theories to suggest that the Complaint fails to state a claim for which relief may be granted against each of the Moving Defendants. Each of these theories relies on assumptions of fact and/or legal conclusions not supported at this stage of the litigation. As such, taking each of Moving Defendants' theories in turn, it is patent that none holds water as Mr. Burch pleaded substantial facts sufficient to support each claim upon which relief is requested.

### i. <u>Defendant Kreiser's Failure to Intervene (Count II)</u>

Defendant Kreiser alleges that Count II of the Complaint fails to state a claim for which relief may be granted because "Officer Kreiser did not have a realistic and reasonable opportunity to intervene." (ECF No. 16 at 9). Defendant Kreiser rests this assertion on unsupported assumptions of how long the assault of Mr. Burch lasted, and on an overly narrow view of the offending conduct. However, taking all well pleaded allegations as true, Kreiser had a reasonable chance to intervene and chose not to. Whether that assertion is true is a question that must be resolved by the fact-finder.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (internal citations omitted). Specifically, "if there [was] a realistic and reasonable opportunity to intervene," such as when "the non-intervening officer saw the beating or had time to reach the offending officer" but did nothing to stop the attack, the non-intervening officer may be held accountable for her failure to act and protect others against abuse by her fellow officers. Id. at 650-51 (internal citations omitted).

Mr. Burch pleaded facts that, when accepted as true, show that he was subjected to excessive force by Officers Howell and Restrepo in the presence of Officer Kreiser, and that Officer Kreiser failed to intervene. (ECF No. 1 ¶ 28-29,

43-44.)  Defendant Kreiser seeks to evade responsibility for her failure to intervene in the assault on Mr. Burch by mischaracterizing the allegations in the Complaint and arguing that, notwithstanding contrary allegations, she "had no realistic and reasonable opportunity to intervene." (ECF No. 16 at 7-8.)  Defendant Kreiser bases the assertion that she had no opportunity to intervene on the contention that the only offending conduct at issue in this case was Defendant Howell's unprovoked shoving of Mr. Burch, which was over so quickly that she had no chance to get involved.  Id. ("as alleged, he was already on the ground.").

First, Defendant Kreiser could have intervened after Defendant Howell first strode past her to shove Mr. Burch unprovoked.  Second, the excessive force alleged includes more than the first or even second instance of unprovoked shoving.  The entire course of unprovoked conduct against Mr. Burch, including twice being shoved by Defendant Howell; knocked into the street; thrown to the pavement and into the flow of oncoming traffic; and dragged by Defendant Restrepo several feet by the neck, were all recited in the Complaint as part of the continuing course of offending conduct.  However, during this **entire period**, Defendant Kreiser pursued silently while continuing to point her OC spray **at Mr. Burch**, at no point attempting to intervene and prevent the continued attack on Mr. Burch by her fellow officers.

Defendant Kreiser also suggests that the Complaint, by not specifying exactly how long the assault by Defendants Howell and Restrepo took, demonstrates that

she had no reasonable or realistic opportunity to intervene.  Not so.  Even without timestamping the order of events, the Complaint amply alleges that Defendant Kreiser slowly pursued and passively watched the brutalization of Mr. Burch continue until his companions arrived at the scene to protest the assault upon Mr. Burch.  Indeed, as the Complaint also notes, Defendant Restrepo had time and opportunity to intervene, though unfortunately he took the opportunity to **assist** in the unprovoked attack on Mr. Burch.

Further, according to the Complaint, the brutalization of Mr. Burch continued and went unimpeded by Defendant Kreiser for so long that Mr. Burch's companions—initially not involved in the interaction—had time to recognize that Mr. Burch was being attacked, that Defendant Kreiser was failing or refusing to intervene against the attack, and to attempt to run to his aid—which they would not have needed to do had Defendant Kreiser acted.  **Only at that point**, did Officer Kreiser shift from passively observing the ongoing assault of Mr. Burch.  However, she **still** refused to intervene against the attack and instead acted to prevent Mr. Burch's companions from coming to his aid.  Quite different from Defendant Kreiser's characterization of events, she at least arguably had ample opportunity to intervene in the violation of Mr. Burch's rights by her fellow officers yet chose instead to simply watch it happen, until two civilian witnesses arrived to protest what they were witnessing.  Regardless of whether it was appropriate for Officer Kreiser

to keep Mr. Burch's companions away once they began running towards the scene, the fact remains that she could have intervened herself before that point but did not.

## ii. **Defendant Carter's Supervisory Liability (Count III)**

Defendant Carter alleges that Count III of the Complaint fails to state a claim for which relief may be granted because it "fails to evidence any well-pled fact that would plausibly demonstrate that [Defendant Carter] has personal involvement or directed the Defendant Officers to conduct themselves in such a manner that he knew or should have known would cause a deprivation of Plaintiff's rights." (ECF No. 16 at 11-12). Defendant Carter misunderstands the nature of the claim against him and simply ignores or dismisses as conclusory those well-pled facts in the Complaint that, when accepted as true, establish his deliberate indifference to the very real risks posed by a Program **he** established and oversaw.

There are two theories of supervisory liability recognized in this Circuit.

Under the first theory, defendants may be sued as policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or

knowledge of a prior pattern of similar incidents." C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000).

Murphy v. Middlesex Cnty., 361 F. Supp. 3d 376, 387 (D.N.J. 2019).

Though Defendant Carter tries to paint the Complaint as alleging a failure to supervise under the second – direct participation – theory quoted above, the Complaint alleges a policymaker claim against him.  To establish a claim under the policymaker theory, the Complaint need only allege that Defendant Carter "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586.  The Complaint alleges substantial facts to that end.  According to the Complaint, Defendant Carter, as Police Commissioner and policymaker at all times relevant to this matter, created and oversaw the 2nd Street Support Program and held ultimate control and authority over who was assigned under it.  Defendant Carter very intentionally "established and maintained" the Program.  For years, he continually assigned Defendants Howell and Restrepo to the Program despite being made aware of the litany of allegations of excessive use of force by both, demonstrating a deliberate indifference to the very serious risk that they and the Program posed to civilians such as Mr. Burch.  Indeed, as the Complaint amply alleges, it was Defendant Carter in 2017 who established the Program of assigning police officers as additional bar security, and it was Defendant Carter who ended that Program in 2025 following media attention to the assault on Mr. Burch.  During

12

the intervening time, Defendant Carter maintained the Program and continually reassigned Defendants Howell and Restrepo, despite knowing their proclivity to become involved in excessive force complaints. Whether a jury would eventually determine that this course of conduct resulted from Defendant Carter's deliberate indifference, or from appalling incompetence, does not change the fact that Mr. Burch has pleaded substantial facts to "allow[] the court to draw **the reasonable inference** that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### iii. Defendant Restrepo's Fourth Amendment Violation and Assault and Battery of Mr. Burch under state law (Counts I and IV)

Defendant Restrepo alleges that Count I of the Complaint fails to state a claim for which relief may be granted because (1) Mr. Burch did not complain that he was improperly handcuffed, and (2) Defendant Restrepo supposedly wrenched Mr. Burch by the neck in order to protect his safety, meaning none of the conduct constituted excessive force. (ECF No. 16 at 15-16).

"Determining whether the force used to effect a particular seizure is 'reasonable' [or 'excessive'] under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted). Whether

police conduct was reasonable "requires careful attention to the facts and circumstances of each particular case, including **the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."** Id. (internal citations omitted) (emphasis added).

Initially, Defendant Restrepo is correct that Mr. Burch did not complain that he was handcuffed in a manner that directly caused him additional physical injury. However, Mr. Burch does assert that the very act of handcuffing him when he was not resisting or fleeing arrest and posed no threat to others, immediately following the unprovoked attack on his person, constituted excessive force. Under the circumstances, where Mr. Burch committed no crime, posed no immediate threat to anyone, and was neither resisting nor attempting to evade arrest, handcuffing Mr. Burch was clearly unnecessary and an excessive use of force.

Additionally, Defendant Restrepo seeks to avoid liability for his handcuffing, grabbing, and dragging Mr. Burch by his neck by asserting that his actions were not "excessive," but were reasonable under the circumstances. Defendant Restrepo alleges that he dragged Mr. Burch as a "split-second judgement" for the purpose of moving Mr. Burch to safety after Defendant Howell threw him to the pavement, causing his head to nearly be crushed by an oncoming vehicle.

Respectfully, and despite Defendant Restrepo's factual allegations as to his motivations, it is too early in this litigation for the Court to delve into whether Defendant Restrepo subjectively and reasonably believed that it was necessary to drag Mr. Burch by the neck. The well-pled facts of the Complaint, when accepted as true for the purpose of determining the Motion to Dismiss, do not permit an inference that Defendant Restrepo could reasonably have believed that it was necessary to drag Mr. Burch by the neck. Specifically, Mr. Burch, having just been shoved to the ground by Defendant Howell, committed no crime, was neither actively resisting arrest nor attempting to flee, nor certainly did he pose any immediate threat to the safety of any person. Moreover, Defendant Restrepo's factual allegation that he had to drag Mr. Burch by the neck to get him to safety is belied by the well-pled facts, which establish that by the time Defendant Restrepo arrived at the scene, the oncoming vehicle had already **missed** Mr. Burch's head.

Defendant Restrepo similarly alleges that Count IV of the Complaint fails to state a claim for which relief may be granted because he was "permitted to use that force which is necessary to defend himself or another from bodily harm while making the arrest." (ECF No. 16 at 19). As noted above, whether Officer Restrepo's actions were necessary is a question for a jury to answer, and his conclusory claims that it was necessary for him to drag Mr. Burch several feet by the neck are neither supported by the well-pled facts, nor entitled to deference.

15

**B. The Motion to Dismiss should be denied because, under the facts as alleged, the Defendants are not entitled to Qualified Immunity.**

Under the doctrine of Qualified Immunity, public officials, such as police officers, can claim immunity from suit under § 1983 unless their challenged conduct "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Plumhoff v. Rickard, 572 U.S. 765, 778 (internal citations omitted).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Taylor v. Barkes, 575 U.S. 822, 825 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  A right may be "clearly established" even if there is not a case directly on point to the exact facts of the case at issue, if the statutory or constitutional right has already been sufficiently defined so as to put the question "beyond debate."  Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741(2011)).

"[U]nder long-established Fourth Amendment law, force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant.  Anthony v. Seltzer, 696 Fed. App'x. 79, 82 (3d Cir. 2017) (collecting cases).  See also, Bannan v. City of Philadelphia, 2012 WL 406325, at *4 (E.D. Pa. Feb. 9, 2012) (concluding right to not be pushed or shoved by police officer, unprovoked, is clearly established "even if no precedent addresses these precise factual circumstances.").

As Moving Defendants admit and acknowledge, "it is clearly established that the use of excessive force is impermissible," and that when a police officer uses excessive force, Qualified Immunity is not available.   (ECF No. 16 at 21). Nevertheless, Moving Defendants claim that Qualified Immunity is available to them here, based on the same deliberate or obtuse misunderstandings of the Complaint and unsupported conclusions supposedly drawn from the well-pled facts.

### i. **Defendant Kreiser**

Defendant Kreiser claims that she is entitled to Qualified Immunity because "it was not clearly established that she must intervene in conduct of other officers when faced with two women running toward the scene [and when] the event of which Plaintiff complained was already over."  As noted above, the well-pled facts do not support Defendant Kreiser's conclusions.   As the Complaint alleged, Defendant Kreiser passively observed the entire pattern of brutalization of Mr. Burch by Defendants Howell and Restrepo, without intervening **at any point** as he was twice shoved, tripped into the street, nearly had his head crushed by an oncoming vehicle, and then yanked and dragged several feet by the neck.  Quite apart from Defendant Kreiser's preferred interpretation, the well-pled facts in the Complaint allege that the offending conduct lasted long enough that at least three other people— Defendant Restrepo and Mr. Burch's two companions—had ample time and opportunity to at least attempt to intervene.  Further, the well-pled facts establish

that, even if Defendant Kreiser ultimately had to respond to Mr. Burch's companions running towards the scene, this distraction did not arise until after the offending conduct in which she could have intervened.  Rather than presenting a question of whether Defendant Kreiser "must intervene in conduct of other officers when faced with two women running toward the scene," (ECF No. 16 at 20), this case presents the long-since answered question of whether she had a duty to intervene when an "unprovoked beating t[ook] place in h[er] presence," Mensinger, 293 F.3d at 650, and when she had a reasonable opportunity to intervene.  Because it has been well-established that she had such a duty to intervene, and did not here, she is not entitled to qualified immunity.

### ii.  Defendant Carter

Defendant Carter's argument that he is entitled to Qualified Immunity is not clear and appears to suffer from the same misunderstanding of the claim against him addressed above.  Defendant Carter asserts that "it was not clearly established that [Plaintiff's] bald and conclusory allegations, even take as true, support [Defendant Carter's] knowledge or acquiescence."  (ECF No. 16 at 18.)  Defendant Carter is accused as a policymaker who, with deliberate indifference to the risk it posed to citizens such as Mr. Burch, established and maintained the 2nd Street Support Program, and assigned officers with known histories of excessive force claims to serve as extra private security on 2nd Street.  He is not alleged, under a participation

theory, to have acquiesced in his subordinates' violations. The Program, created and maintained by Defendant Carter and implemented here by officers with known histories of excessive force, directly caused the harm to Mr. Burch. Certainly, by the time of these events, it had been well-established that a policymaker may be held liable for constitutional harms caused by a policy or program that they created and oversaw with deliberate indifference to the risks it posed.

As such, Defendant Carter is not entitled to Qualified Immunity.

### iii.  **Defendant Restrepo**

Finally, Defendant Restrepo's argument that he is entitled to Qualified Immunity is based entirely on his repeated conclusory argument that he did not use excessive force on Mr. Burch. Specifically, Defendant Restrepo rests his argument on asserting that there "is no case law to place [him] on notice that his quick decision to drag [Mr. Burch] from the flow of traffic constituted a violation." (ECF No. 16 at 22). However, Defendant Restrepo relies on an overly myopic construction of the Qualified Immunity Doctrine. As noted, "even if no precedent addresses these precise factual circumstances" as long as it is clearly established that a particular course of conduct is violative of a person's statutory or constitutional rights, an official defendant may be held liable for their conduct and Qualified Immunity is not available. It is clearly established, as all Moving Defendants agree, that "force may not legitimately be used against an individual who is compliant and poses no

ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant." Anthony, supra.

According to the well-pled facts in the Complaint, Mr. Burch was not resisting arrest, was not fleeing from the police, posed no immediate or credible threat to any person, and necessarily was not noncompliant as he had not received any directive from police at the time he was assaulted by Defendants Howell and Restrepo. Moreover, though Defendant Howell, through his own excessive use of force against Mr. Burch, nearly caused Mr. Burch's head to be crushed by an oncoming vehicle, by the time Defendant Restrepo grabbed hold of Mr. Burch's neck and pulled hard enough to drag his entire body several feet away, the vehicle had already passed and Mr. Burch was no longer in immediate danger of having his head crushed. Simply put, there can be no serious argument that a reasonable police officer would not know that yanking and dragging a non-resisting person by the neck with such force as to pull their prone body several feet was necessary to effectuate an arrest for suspected summary offenses, particularly after the person had just suffered two unprovoked shoves from another police officer and been slammed into the pavement and when the person had already survived the only immediate non-officer threat to their safety.

As such, Defendant Restrepo is not entitled to Qualified Immunity.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff Carter Burch, respectfully requests that the Court deny Defendants' Kreiser, Restrepo, and Carter's Motion to Dismiss in its entirety. To the extent the Court concludes additional factual allegations are required to establish federal notice-pleading requirements, Plaintiff, respectfully, requests leave to amend.

Respectfully submitted,

Dated: December 5, 2025

*/s/ Scott Stedjan*
Scott Stedjan, Esq.
PA ID: 318851
KILLIAN & GEPHART LLP
218 Pine Street
Harrisburg, PA 17101
sstedjan@killiangephart.com
T: 717-232-1851
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true and correct copy of the foregoing was served upon the following via the Courts ECF eService:

Sheryl Brown, Esq.
sbrown@bellwoarkelly.com
*Counsel for Defs Carter, Restrepo and Kreiser*

Christopher Gerber, Esq.
cgerber@lambmcerlane.com
*Counsel for Def. Howell*

Dated: December 5, 2025                    */s/  Scott Stedjan*
                                           Scott Stedjan, Esq.
                                           Killian & Gephart LLP
                                           218 Pine Street
                                           Harrisburg, PA 17101
                                           *Counsel for Plaintiff*